.Robert D. ORR, Frank Dixon, C. H. Peterson, Keith Kettering, Carol Reed and Phyllis Huss, Plaintiffs and Respondents,

v.

Richard F. KNEIP, Governor of the State of South Dakota; Vern Butler, Secretary of the Department of Natural Resources of the State of South Dakota; The Department of Natural Resources of the State of South Dakota; The South Dakota Conservancy District; The Board of Natural Resource Development of the Department of Natural Resources, Wesley Beaman, Neil Evans, Larry Green, Jake Muehl, James Schulbach, Dr. James Sturdevant, and J. Harvey Glover, Members of the Board of Natural Resource Development; Michael Madden, Director of the Oahe Conservancy Subdistrict; John Sieh, Director of the Oahe Conservancy Subdistrict; Leonard W. Naessig, Director of the Oahe Conservancy Subdistrict; Arnold Schurr, Director of the Oahe Conservancy Subdistrict; Siegfried Swanhorst, Director of the Oahe Conservancy Subdistrict; Glenn Overby, Director of the Oahe Conservancy Subdistrict; Douglas Beckett, Director of the Oahe Conservancy Subdistrict; and William Piper, Director of the Oahe Conservancy Subdistrict; Kenneth Marsh, Stephen Thorson and R. B. Hipple, Defendants,

and

Oahe Conservancy Subdistrict, Defendant and Appellant,

and

Edmunds County, a political subdivision of the State of South Dakota, Intervenor and Defendant,

and

Day County, a political subdivision of the State of South Dakota, Amicus Curiae,

and

Clark County, a political subdivision of the State of South Dakota, Amicus Curiae,

and

City of Huron, a municipal corporation of the State of South Dakota, Amicus Curiae.

Nos. 12596, 12629.

Supreme Court of South Dakota.

Argued Oct. 12, 1979.

Decided Dec. 28, 1979.

William J. Srstka, Jr. of Duncan, Olinger, Srstka, Lovald & Robbennolt, Pierre, for plaintiffs and respondents.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for all other defendants; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellant, Oahe Conservancy Subdistrict.

Michael T. Hogan, Ipswich, for intervenor and defendant, Edmunds County.

Leon Vander Linden, Webster, for amicus curiae, Day County.

D. G. Syvertson, Clark, for amicus curiae, Clark County.

Glen A. Severson, Huron, for amicus curiae, City of Huron, South Dakota.

MORGAN, Justice.

This consolidated appeal is taken by the Oahe Conservancy Subdistrict (subdistrict) from two judgments of the Circuit Court, Sixth Judicial Circuit. Appeal # 12596 challenges the trial court's decision in a declaratory judgment action that the apportionment of the Oahe Conservancy Subdistrict Board of Directors is unconstitutional. The subdistrict appeals on the issue of adequacy of the instructions. In Appeal # 12629, the subdistrict challenges the trial court's refusal to award it costs and damages allegedly incurred as a result of the temporary injunction which this court later vacated. We reverse and remand.

This controversy was previously before us in *Orr v. Kneip*, 260 N.W.2d 638 (S.D.1977), hereinafter referred to as *Orr I*.[1] The facts are set forth fully in that opinion and will not be repeated here at length. In summary, plaintiffs, respondents herein, brought this action against the subdistrict challenging the constitutionality of the apportionment of the subdistrict's board of directors. Plaintiffs contend that the current apportionment system violates their rights under the due process and equal protection clauses of the United States Constitution and appropriate sections of the South Dakota Constitution. Plaintiffs' claim is based primarily on the disparity between municipal and non-municipal or rural representation since nine directors on the board, who are elected from rural areas and represent only 35.18% of the subdistrict's population, have 81.81% of the vote on the board while the municipal residents, who comprise 64.8% of the total population, elect two directors who have only 18.18% of the vote on the board.

In *Orr I*, the trial court originally concluded that the subdistrict is a governmental entity and subject to the one-man, one-vote rule. Consequently, the court issued a temporary injunction that temporarily weighted the votes of the directors in a manner which comported with the one-man, one-vote principle. Upon appeal of that action, this court vacated the injunction solely on the issue of the propriety of the injunction without reaching the merits of the case as to the constitutional question and remanded the case for trial.

The complaint originally consisted of some six causes of action seeking injunctive relief, writs of prohibition, mandamus, certiorari, and quo warranto, and a declaratory judgment declaring the present apportionment illegal and unconstitutional. At an omnibus hearing in advance of trial, the trial court dismissed all but the declaratory judgment action.

Although the principal issue in the case originally was whether the subdistrict is a governmental purpose unit or a special purpose unit, that issue is not before us on this appeal. Although the record is unclear, it appears that the trial court on the remand decided at another pretrial conference to treat the subdistrict as a special purpose unit rather than a governmental purpose unit.[2] Therefore, the parties were advised to try the case with the understanding that the rational basis test rather than the strict scrutiny test was applicable.

---

1. *See also, In re Oahe Conservancy Subdistrict*, 85 S.D. 443, 185 N.W.2d 682 (1971).

2. The settled record contains neither a transcript of the pretrial conference nor the customary order of the trial court summarizing the events which transpired at the pretrial conference. It is evident, however, from remarks of counsel and the court when jury instructions were being settled, that, prior to trial, the trial judge rejected his original decision that the subdistrict is a governmental unit and decided to proceed on the theory that the subdistrict was a special purpose unit. From these remarks, it is also apparent that both parties were apprised of the trial judge's decision in this regard.

Trial to a jury was held in June of 1978. Prior to the trial, the parties entered into a "Stipulation of Facts" which was read to the jury. This stipulation details the history of the subdistrict, the manner in which the board is elected, the statutory authority for elections, the powers of the subdistrict, and the projects of the subdistrict and their benefits. The bulk of the testimony adduced at trial addressed the question of whether the activities of the subdistrict had a greater impact on the rural residents than on the municipal residents. Conflicting testimony was given on this point with plaintiffs' witnesses testifying that municipal residents were significantly affected by the subdistrict's activities and the subdistrict's witnesses testifying that rural residents felt the more substantial impact.

The trial court submitted the case to the jury on a special verdict form inquiring:

"Do you find that the apportionment of the Oahe Conservancy Subdistrict has a rational basis for its apportionment taking into consideration the factors named in these instructions?"

"If you find that there is a rational basis for the apportionment of the Oahe Conservancy Subdistrict, do you find that the apportionment is reasonably precise as defined by these instructions?"

To the first question, the jury answered yes, and to the second, no. As a result, the trial court entered a final judgment which declared the "apportionment of the Oahe Conservancy Subdistrict Board of Directors . . . to be unconstitutional as violation [sic] of the constitution of the United States and the State of South Dakota." The subdistrict appeals from this judgment.

■ As previously stated, the trial court first treated the subdistrict as a governmental unit but subsequently reversed itself and decided to treat it as a special purpose unit. Generally, a governmental entity is termed a "governmental purpose unit" if it exercises general governmental powers as opposed to a "special purpose unit" which disproportionately affects a definable class, and has a special limited purpose. *Town of Lockport v. Citizens for Community Action*, 430 U.S. 259, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977); *Salyer Land Company v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973); *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973). A governmental purpose unit is subject to the "strict scrutiny" test which requires the use of a mathematical calculation to determine whether the apportionment meets the one-man, one-vote criterion with reasonable precision. A special purpose unit, on the other hand, is subject to the "rational basis" test which is whether there is a state of facts which may reasonably be conceived to justify the apportionment (a rational relationship) and whether the classification is reasonably precise, i. e., no persons are being included in or excluded from the class when they should not be under the apportionment.[3] Although both tests contain a requirement of reasonable precision, the meaning of the phrase is substantially different when placed in the context of the respective tests. In the "strict scrutiny" test, the precision is a mathematical variation within reasonable limits whereas, in the "rational basis" test, the precision is in selectivity within reasonable limits.

■ Plaintiffs urge this court to decide the issue of whether the subdistrict is a special purpose unit or a governmental purpose unit, the determination of which will be conclusive of whether the trial court erred in applying the rational basis test. The court's instructions became the law of the case subject to reversal on appeal only if the record of objection, exception and the proposal of correct instructions is preserved. While counsel for plaintiffs assiduously made his record to preserve the issue, we must decline to address it since it has not

---

3. Using somewhat different phraseology, this court has previously adopted and applied essentially the same two-pronged "rational basis" test. *See, Morrill v. Wollman*, 271 N.W.2d 356 (S.D.1978), appeal dismissed, 441 U.S. 938, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1979); *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975).

been properly presented to us due to plaintiffs' failure to cross-appeal.

The first question we must deal with is the status of the special jury verdicts rendered herein; that is, whether they were binding on the trial court or merely advisory. In its answer, the subdistrict demanded a jury trial. When plaintiffs moved to strike the demand, the trial court denied the motion "on the basis of [SDCL] 21–24–9, among other things." [4]

 Article VI, § 6 of the South Dakota Constitution mandates that a party be given a jury trial as a matter of right if the action is one at law. Equity actions, on the other hand, are not triable of right by a jury. It is generally recognized, however, that declaratory judgment actions are neutral and may involve either equitable claims or legal claims or both. *See, Gouker v. Winnebago County Board of Supervisors,* 37 Ill.2d 473, 228 N.E.2d 881 (1967), and "Right to Trial by Jury in Declaratory Judgment Actions", 3 Conn.L.Rev. 564 (1971). The court must look to the pleadings as a whole and the relief requested to determine the character of the claim. *See, Winney v. Board of Commissioners of County of Vigo,* 369 N.E.2d 661 (Ind.App.1977). In the instant case, as in the *Winney* case, the only relief requested is a declaration of rights. No equitable relief is available since the trial court dismissed the requests for injunctive relief and the various writs. The only issue in the case is the constitutionality *vel non* of the subdistrict's apportionment plan. A determination with regard to constitutionality is within the jurisdiction of a court of law rather than a court of equity. *See, Winney v. Board,* supra at 664. Consequently, in the instant case, the equity powers of the court were not invoked and the jury verdicts cannot be considered advisory, since advisory juries are available only in actions which sound in equity. SDCL 15–

6–39(c). Therefore, the subdistrict was entitled to a trial by jury, subject to the provisions of SDCL 21–24–9.

 SDCL 21–24–9 provides that issues of fact may be submitted to a jury in a declaratory judgment action and the jury's resolution of the factual issues is binding on the court.[5] That statute clearly does not alter the well-established rule that questions of law are solely within the province of the court. In the instant case, the trial court submitted to the jury the questions of whether the subdistrict's apportionment has a "rational basis" and is "reasonably precise." We view these questions to be questions of law which the court should have decided rather than issues of fact for jury determination.

 We agree with the subdistrict that the trial court strayed from its decision to apply the "rational basis" test by improperly injecting into the jury instructions factors of the "strict scrutiny test." The instructions, when read as a whole, clearly show that the trial court used "reasonable precision" in the context of mathematical precision as opposed to precision of selection as distinguished above. However, the trial court's error in this regard is irrelevant in view of our conclusion that the court erred in the first instance by submitting the special verdicts to the jury since, in the posture of the case as it was tried, we perceive no fact questions that were submissible to the jury pursuant to SDCL 21–24–9.

 As we view the record, the only issue of fact was the question of disproportionate impact on the rural landowners. The balance of the evidence was stipulated. The issue of disproportionate impact, however, is one of the factors determinative of whether or not the subdistrict qualifies as a special purpose unit. In *Hadley v. Junior College District,* 397 U.S. 50, 56, 90 S.Ct.

---

4. Since the trial court did not enumerate the other bases for its decision, our review is limited to the ground specifically stated.

5. SDCL 21–24–9 states:

When a proceeding under this chapter [the South Dakota Declaratory Judgment Act] in-

volves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

791, 795, 25 L.Ed.2d 45, 51 (1970), the Supreme Court stated:

It is of course possible that there might be some case in which a State elects certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups that a popular election in compliance with *Reynolds, supra,* might not be required[.]

(emphasis in original)

In *Salyer, supra,* the Supreme Court, after citing *Hadley,* concluded: "[The Tulare district] by reason of its special limited purpose and of the disproportionate effect of its activities on landowners as a group, is the sort of exception to the [one-man, one-vote] rule . . . which the quoted language from *Hadley* . . . contemplated." 410 U.S. at 728, 93 S.Ct. at 1229, 35 L.Ed.2d at 666.

■ As previously noted, the trial court, prior to trial, apparently accepted the existence of the "limited purpose" and "disproportionate effect" factors in arriving at his determination that he would instruct the jury on the rational basis test. Consequently, even though the parties introduced conflicting testimony on the issue of impact and the trial court rejected the subdistrict's proposed instructions on the issue, the subdistrict could hardly complain of this as error since the trial court in effect ruled in their favor, even before the trial commenced.

We hold, therefore, that the trial court committed reversible error by improperly relinquishing questions of law to the jury and we reverse the judgment and remand the case to the trial court with direction to enter findings of fact and conclusions of law and a judgment based thereon from the entire record and in accordance with this opinion. We suggest that the court define in the findings of fact such facts as he relied on to conclude as a matter of law that the unit was a special purpose unit and that the rational basis test was applicable. Then the court should delineate such facts as he perceives do or do not justify the apportionment scheme and then such facts as demonstrate whether or not any persons are included or excluded who should not be so included or excluded, thereby affording a basis for concluding as a matter of law whether or not the rational basis test is satisfied.

With respect to Appeal # 12629, prior to issuance of the temporary injunction which gave rise to *Orr I,* plaintiffs were required to execute an undertaking in the amount of $100,000.00. At the omnibus hearing, the subdistrict made a motion for the assessment of damages and presented testimony and documentation to support its claim of $14,597.20 which includes $11,127.33 in attorneys' fees. The trial court later denied the motion as well as the subdistrict's motion for rehearing, but gave no reason for its decision.

■ SDCL 15–6–65(c) provides that a party who is improperly enjoined is entitled to those costs and damages which he sustains by reason of the preliminary injunction or the temporary restraining order.[6] The allowable costs and damages under the statute are those which are the "natural and proximate result of the injunction." *Edmison v. Sioux Falls Water Co.,* 10 S.D. 440, 445, 73 N.W. 910, 912 (1898). "Speculative and remote damages are not properly allowable, nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence." 10 S.D. at 444, 73 N.W. at 912. Thus, damages which are a result of the main suit rather than those which flow from the injunction are not recoverable. Likewise, attorneys' fees are compensable under this statute but are "limited to the reasonable value of such attorney's services as were necessitated by the issuance of the temporary injunction and should not include attorney's fees incurred in the defense of the main suit." *Dodds v. Bickle,* 77 S.D. 54, 63, 85 N.W.2d 284, 289 (1957).

6. At the time of this action, the provisions of this statute were contained in SDCL 21–8–10.

The temporary injunction which weighted the votes of the subdistrict board of directors became effective on July 29, 1977, and was not vacated until December 30, 1977. The subdistrict claims only those costs and attorneys' fees incurred in its attempt to have the temporary injunction vacated. SDCL 15–6–65(c) clearly contemplates compensation for those expenses. Therefore, the trial court's decision refusing to assess damages against plaintiffs was error. Since the record discloses some controversy over certain items claimed by the subdistrict as to whether the expenses are attributable to the injunction or the defense of the main suit, we remand to the trial court with direction to conduct such further proceedings as are necessary to allow the amount of costs and attorneys' fees properly assignable to the temporary injunction.

Accordingly, we reverse and remand both appeals with directions.

All the Justices concur.